AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black GPS Tracking Device<br>Seizure No. 2023250400011101-0005<br>("Target Device") | )<br>)<br>)<br>)<br>)<br>)    Case No.   '23 MJ4196 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952, 960, 963 | Importation of a Controlled Substance<br>Conspiracy to Import |

The application is based on these facts:

See Attached Affidavit of HSI Special Agent Marcus Matthews incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Marcus Matthews*

*Applicant's signature*

Special Agent Marcus Matthews, HSI

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date: _____ 11/16/2023 _____

*Barbara L Major*

*Judge's signature*

City and state: San Diego, California

Hon. Barbara L. Major

*Printed name and title*

**AFFIDAVIT**

I, Special Agent Marcus Matthews, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.     I submit this affidavit in support of an application for a warrant to search the following Global Positioning System ("GPS") device:

Black GPS Tracking Device

Seizure No. 2023250400011101-0005

("**Target Device**")

as further described in Attachment A, for subscriber information and global positioning system location data from September 23, 2022, to October 23, 2022. There is probable cause that these records and information constitute evidence of violations of federal criminal law, to wit, Title 21, United States Code, Sections 952, 960, and 963 as described in Attachment B. This affidavit and application are sought pursuant to Rule 41 of the Federal Rules of Criminal Procedure.  The requested warrant relates to the investigation and prosecution of Edith ESPIRITU Comparan (ESPIRITU) for importing 68.37 kilograms (150.73 lbs.) of methamphetamine and 1.16 kilograms (2.56 lbs.) of fentanyl from Mexico into the United States.  The **Target Device** is currently in the custody of Homeland Security Investigations and located at 880 Front Street, Suite 3200, San Diego, California 92101.

**BACKGROUND**

2.     I have been employed as a Special Agent with Homeland Security Investigations (HSI) since August of 2020. I am currently assigned to the HSI Office of the Special Agent in Charge, in San Diego, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

3.     During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California.  Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational

habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

4.      Based on my training, experience, debriefs with drug traffickers at multiple levels of drug trafficking organizations, and conversations with experienced investigators, I am aware that a common tactic utilized by drug traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry.  With respect to the importation of controlled substances in vehicles, I am aware that traffickers in Mexico frequently utilize multiple vehicles to transport controlled substances from their origination in Mexico to their final destination in the United States.  Oftentimes traffickers transport the controlled substances to a location near the international border in Mexico, and then transfer them into a vehicle for crossing into the United States.  Once inside the United States these vehicles can sometimes stop just over the border to transfer the controlled substances to another vehicle, or they can drive further into the interior of the United States prior to unloading them.  Drug traffickers will use the same vehicle and driver on multiple occasions if they are successful in crossing controlled substances on the first occasion.

5.      Based upon my training, experience, and consultations with law enforcement officers experienced in controlled substances trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that vehicle GPS tracking devices receive microwave signals emitted by satellites in earth's orbit as part of the Global Navigation Satellite System network. The tracking device is able to determine its location based on the signals it receives from the Satellites. For tracking devices located in vehicles, I am aware that trackers are able to gather information about a vehicle's speed, location, idle time, and additional diagnostics.  The tracker then transmits all the data back to the computer servers maintained by the company servicing the tracker. The tracking device location can be determined anywhere on earth and reflects its location utilizing latitude and

longitude measurements.  Depending upon the number of satellites that connect to the device and the design of a particular tracker, the location can be accurately determined within meters. The companies that provide GPS tracker services may maintain accounts for individuals utilizing the trackers. They maintain account information that can include the account holder's name, address, email, and phone numbers.  The accounts can also maintain the location data for trackers during the tracker's period of activation. I am also aware that the customers using the devices are then able to access the location data utilizing applications on their computer, cellphone, or other mobile device. Searches of tracker accounts associated with the importation of controlled substances may yield evidence:

    a.    tending to indicate patterns of drug importation from Mexico into the United States to include locations, dates, and times;

    b.    tending to identify the location of drug stash houses in both Mexico and the United States;

    c.    tending to identify the location where drugs are loaded into vehicles in Mexico as well as locations where the drugs are unloaded once the importation of drugs from Mexico into the United States is complete;

    d.    tending to identify the user of, or persons with control over or access to, the vehicle used for importation of controlled substances;

    e.    tending to identify the routes taken to successfully cross drugs and further transport them into the interior of the United States; and

    f.    tending to identify co-conspirators involved in the importation of controlled substances through subscriber information.

    6.    The facts and conclusions set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation; my review of documents and records related to this investigation; communications with others who have personal knowledge of the events, details, and circumstances described herein; and information gained through my training, experience, and communications with colleagues. Because this affidavit is submitted for the limited

purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. The dates, times, and amounts are approximate.

## FACTS SUPPORTING PROBABLE CAUSE

7.     On October 23, 2022, at approximately 1:13 AM, Edith ESPIRITU Comparan, ("ESPIRITU"), a Legal Permanent Resident, applied for entry into the United States from Mexico through the San Ysidro Port of Entry in vehicle lane #12.  ESPIRITU was the driver, sole occupant, and registered owner of a 2008 Chrysler Aspen ("the vehicle") bearing California license plates.

8.     A Customs and Border Protection Officer (CBPO) received two negative Customs declarations from ESPIRITU. ESPIRITU stated she was crossing the border to go to Santa Ana in Los Angeles, California.

9.     A CBPO operating the Z-Portal X-Ray machine detected anomalies in all four doors and both quarter panels of the vehicle.

10.    A Canine Enforcement Team was conducting secondary inspection operations when the Human and Narcotic Detection Dog alerted to the front driver side door.

11.    Further inspection of the vehicle resulted in the discovery of 148 total packages concealed within all the doors and the rear quarter panels of the vehicle.  Of those packages, 145 packages contained a substance, a sample of which field-tested positive for the characteristics of methamphetamine, with a total approximate weight of 68.37 kgs (150.73 lbs). Three packages contained a substance, a sample of which field tested positive for the characteristics of fentanyl, with a total approximate weight of 1.16 kgs (2.56 lbs).

12.    ESPIRITU was placed under arrest at approximately 4:48 AM and charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance.

13.    During a post-Miranda interview, ESPIRITU denied knowledge that the narcotics were in the vehicle. ESPIRITU stated that she was going to the Los Angeles area to move in with her brother-in-law and her estranged husband. ESPIRITU stated the man

she purchased the vehicle from recently picked it up and took it to get the speakers fixed. ESPIRITU stated the vehicle was returned to her on October 21, 2022, and she had not driven the vehicle but had only moved it closer to her place to pack items in it for her move. ESPIRITU stated on the day of her arrest was the first time she had driven the vehicle since it had been repaired.

14.     The vehicle has been held at the Apple Towing lot at 9020 Airway Road, San Diego, California 92154. The **Target Device** was found near the steering column area inside of the vehicle during a vehicle viewing at the Apple Towing lot on August 11, 2023.

15.     Based on my training and experience, and my consultation with other law enforcement officers who have analyzed GPS tracking devices, I believe the **Target Device** may contain SD, SIM, or other memory cards that may contain subscribers' contact and billing information and detailed information concerning the subscriber's tracker location based on GPS tracking signals (such as latitude and longitude data) associated with the individual tracking device.

16.     In light of the above facts and my experience and training, there is probable cause to believe that the **Target Device** contains information associated with the movement of ESPIRITU'S vehicle in both the United States and Mexico. Further, in my training and experience, drug traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. It is unknown how long ESPIRITU was involved in importing controlled substances. Coordinators of drug importation events may use the same driver on multiple occasions, and they may have the driver travel back and forth across the border to develop a normal crossing pattern. Based on my review of TECS border crossing records, ESPIRITU crossed with the vehicle into the United States multiple times in April of 2022 and twice in October 2022, including the day of arrest October 23, 2022. Accordingly, I request permission to search the **Target Device** for data beginning on April 6, 2022, up to and including October 23, 2022.

## METHODOLOGY

17.     It is not possible to determine, merely by knowing the GPS devices' make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Many GPS tracking devices store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some GPS tracking device models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the tracking device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18.     Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device** and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

20.     Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

//

//

//

## CONCLUSION

21.     Based on the foregoing, I request that the Court issue the proposed search warrants for the **Target Device**, pursuant to Federal Rule of Criminal Procedure 41. Based upon my training and experience, consultation with other law enforcement officers experienced in controlled substances importation investigations, and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that the **Target Device**, as described in Attachment A, will contain evidence of the importation of controlled substances, as set forth in Attachment B.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Marcus Matthews*
Special Agent Marcus Matthews
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 16th day of October, 2023.

*Barbara L Major*
Honorable Barbara L. Major
United States Magistrate Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>ATTACHMENT A</u>

PROPERTY TO BE SEARCHED

The following property is to be searched:

Black GPS Tracking Device

Seizure No. 2023250400011101-0005

(“**Target Device**”)

The **Target Device** is currently in the possession of Homeland Security Investigations, located at 880 Front Street, Suite 3200, San Diego, California 92101.

## **ATTACHMENT B**
### ITEMS TO BE SEIZED

Authorization to search the **Target Device** described in Attachment A includes the search of disks, memory cards, SIM cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in **Target Device** for evidence described below, between the dates of April 6, 2022, up to and including October 23, 2022. The seizure and search of the **Target Device** shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the GPS tracking devices will be electronic records, subscriber information, and location data, for the period of April 6, 2022, up to and including October 23, 2022:

      a.    tending to indicate patterns of drug importation from Mexico into the United States to include locations, dates, and times;

      b.    tending to identify the location of drug stash houses in both Mexico and the United States;

      c.    tending to identify the location where drugs are loaded into vehicles in Mexico as well as locations where the drugs are unloaded once the importation of drugs from Mexico into the United States is complete;

      e.    tending to identify the user of, or persons with control over or access to, the vehicle used for importation of controlled substances;

      f.    tending to identify the routes taken to successfully cross drugs and further transport them into the interior of the United States; and

      g.    tending to identify co-conspirators involved in the importation of controlled substances through subscriber information.

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963 (importation of controlled substances and conspiracy).